2021 PA Super 70

| | | |
|---|---|---|
| RONALD L. BURNETT | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PENN CENTRAL CORPORATION A/K/A | : | No. 1149 EDA 2020 |
| AMERICAN PREMIER | : | |
| UNDERWRITERS, INC AND | : | |
| CONSOLIDATED RAIL CORPORATION | : | |
| AND CSX TRANSPORTATION, INC | : | |

Appeal from the Order Dated February 26, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 190607181

BEFORE:  OLSON, J., NICHOLS, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 15, 2021**

Appellant Ronald L. Burnett ("Mr. Burnett") appeals from the order granting the motion filed by Appellees Penn Central Corporation[1] a/k/a American Premier Underwriters, Inc. ("American Premier"), Consolidated Rail Corporation ("Consolidated Rail"), and CSX Transportation, Inc. ("CSX

_____

* Former Justice specially assigned to the Superior Court.
[1] Penn Central Corporation ("Penn Central"), which was incorporated in Pennsylvania with its corporate headquarters in Philadelphia, filed for bankruptcy and ceased all railroad operations in the 1970s.  All properties of Penn Central became properties of the trustees in Penn Central's bankruptcy. Thereafter, as part of the Regional Rail Reorganization Act, 45 U.S.C. § 701 *et seq.*, Congress created Consolidated Rail, and all employees of Penn Central were offered continued employment with Consolidated Rail. American Premier is a successor in interest to Penn Central's non-railroad assets and is primarily engaged in the business of insurance.

Transportation") (collectively "Appellees") to dismiss Mr. Burnett's complaint filed in the Court of Common Pleas of Philadelphia County based on the doctrine of *forum non conveniens*, for re-filing in a more appropriate forum. After a careful review, we affirm.

The relevant facts and procedural history are as follows: Mr. Burnett is a non-resident of Pennsylvania and resides in Chicago, Illinois. He instituted the instant action pursuant to FELA[2] and LIA[3] against American Premier, which is incorporated in Pennsylvania with an address for service in Harrisburg, Consolidated Rail, which is incorporated in Pennsylvania with a principal place of business in Philadelphia, and CSX Transportation, which is incorporated in Virginia with an address for service in Florida.[4]

Mr. Burnett averred Appellees conduct business in and have substantial contacts with Philadelphia. He specifically averred Appellees are "engaged in interstate commerce as a common carrier by rail, operating a line and system of railroads and transacting substantial business in the Commonwealth of

---

[2] Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60.

[3] Locomotive Inspection Act ("LIA"), 49 USC § 20701.

[4] In July of 1998, the Surface Transportation Board approved a plan by which CSX Transportation and Norfolk Southern Corporation acquired Consolidated Rail through a joint stock purchase, and they split most of Consolidated Rail's assets between them. CSX Transportation and Norfolk Southern Corporation took administrative control of Consolidated Rail on August 22, 1998.

Pennsylvania, including Philadelphia County." Mr. Burnett's Second Amended Complaint, filed 11/13/19.[5]

Mr. Burnett averred that, from 1964 to 2002, he was employed by Appellees as a brakeman, conductor, policeman, yardmaster, and trainmaster at rail yards in Chicago, Illinois, as well as neighboring Hammond, Indiana. He further averred that, as a result of his job duties, he was exposed to chemicals and cancer-causing substances, which resulted in his development of lung and throat cancer. He posited Appellees were negligent in failing to provide him with a reasonably safe work place as required under the relevant statutes.

On December 3, 2019, Appellees filed a joint motion to dismiss under 42 Pa.C.S.A. § 5322(e) and the doctrine of *forum non conveniens*. In support of their motion, Appellees attached Mr. Burnett's answers to interrogatories, as well as two affidavits from Lauren Lamp, Field Investigations Specialist II for CSX Transportation.

Relevantly, in the motion to dismiss, Appellees indicated that Mr. Burnett admitted he is a twenty-year resident of Chicago, Illinois, and he has never lived in Pennsylvania. Appellees' Motion to Dismiss, filed 12/3/19, at 4.

_____

[5] We note Mr. Burnett filed a complaint on June 26, 2019, an amended complaint on August 15, 2019, and a second amended complaint with court permission on November 13, 2019. The second amended complaint is not paginated.

Mr. Burnett admitted he worked at the Ashland Train Yard in Chicago, Illinois, and the Colehour Train Yard in Hammond, Indiana, for the duration of his employment with Appellees.[6] *Id.* He never worked for Appellees in Pennsylvania. *Id.*

Mr. Burnett admitted he was not diagnosed with his illness in Pennsylvania, and he never received medical treatment in Pennsylvania for the illness underlying the instant action. *Id.* Appellees listed three physicians, who treated Mr. Burnett in Illinois and would have knowledge of Mr. Burnett's illness. *Id.*

Additionally, Appellees indicated a viewing of Mr. Burnett's work sites would be "important" in this case. *Id.* at 21. In this vein, Appellees asserted:

> It is important to show the jury the enormity of the premises underlying [Mr. Burnett's] claims, where he worked, the locomotives that he worked in and around, and to dispel any notion that [Mr. Burnett] was, as he claims, exposed to allegedly injurious substances while working in rail yards and in and around any locomotives….[M]odern technology cannot obviate the need for site visits.

*Id.* (citation omitted).

In her first supporting affidavit, Ms. Lamp confirmed that Mr. Burnett's work record reveals he worked for Appellees at rail yards in Illinois and Indiana. Ms. Lamp identified three of Mr. Burnett's former co-workers and supervisors, including T.W. Horan, J.G. Eannace, and A.J. McCormick, all of

---

[6] Appellees aver the train yards in Illinois and Indiana are approximately a thirty-six minute drive from one another. *Id.* at 18.

- 4 -

whom reside in Illinois. Ms. Lamp noted Mr. Burnett's employment records are stored in Florida and New Jersey.

In her second supporting affidavit, Ms. Lamp identified four additional former co-workers and supervisors, including E. Hessert, K.I. Miller, D.C. Litto, and R.E. McCarter, all of whom worked with Mr. Burnett. Mr. Hessert and Mr. Litto reside in Illinois, while Mr. Miller and Mr. McCarter reside in Indiana. Ms. Lamp indicated that any yet-to-be-identified co-workers and supervisors of Mr. Burnett would logically be expected to be located in Indiana or Illinois since he never worked at any Pennsylvania location.

Ms. Lamp further indicated Appellees' former employees will suffer greater personal disruption, inconvenience, and costs to travel to Pennsylvania, as opposed to Illinois or neighboring Indiana for trial. Appellees noted its witnesses are more likely to testify voluntarily if trial is held in Illinois or Indiana, as opposed to Pennsylvania. *Id.* at 21.

Moreover, Appellees argued Philadelphia County is suffering from court congestion, administrative difficulties, and an undue burden on juries due to an "explosion of out-of-state filing" of mass tort cases. *Id.*

Based on the aforementioned, Appellees averred the instant action has no *bona fide* connection to Pennsylvania, and dismissal of the action is proper since there is a more convenient forum where litigation could be conducted more easily, expeditiously, and inexpensively. Additionally, Appellees reasoned the only connection between Pennsylvania and the instant matter is

that Consolidated Rail has its headquarters in Pennsylvania and American Premier is incorporated in Pennsylvania. However, Appellees argued these connections are unrelated to Mr. Burnett's claim that he suffered injury in connection with his employment in Illinois and Indiana.

Appellees indicated they agreed to waive the statute of limitations if Mr. Burnett re-filed his action in Illinois, within ninety days of the dismissal of the suit in Philadelphia, and agreed not to object on the basis of venue or personal jurisdiction if the matter was re-filed in Illinois, or some other proper forum.

On December 23, 2019, Mr. Burnett filed a response in opposition to Appellees' motion to dismiss for *forum non conveniens*, as well as a supporting memorandum. Therein, Mr. Burnett admitted he did not live, work, own property, or receive medical treatment in Pennsylvania. Moreover, he admitted his former co-workers and supervisors "predominantly reside in Illinois." Mr. Burnett's Response to Appellees' Motion to Dismiss, filed 12/23/19, at 3.

However, Mr. Burnett denied that all of his fact witnesses are located outside of Pennsylvania. Specifically, he indicated:

> [Mr. Burnett] intends to call four former [Consolidated Rail] corporate witnesses who worked for [Consolidated Rail] at its headquarters in Philadelphia, Pennsylvania. [Mr. Burnett] intends to call Ramon Thomas, who was [Consolidated Rail's] industrial hygiene manager who worked for [Consolidated Rail]. Mr. Thomas currently works in Philadelphia and lives in Yardley, Pennsylvania. [Mr. Burnett] intends to call William Barringer, who was [Consolidated Rail's] safety director who worked for [Consolidated Rail] in Philadelphia, Pennsylvania. Mr. Barringer currently lives in Naples, Florida. [Consolidated Rail] routinely

- 6 -

brings Mr. Barringer to testify live in Philadelphia, Pennsylvania. [Mr. Burnett] intends to call Marcia Comstock, M.D., who was [Consolidated Rail's] former medical director who worked for [Consolidated Rail] in Philadelphia. Dr. Comstock lives in Wayne, Pennsylvania. [Mr. Burnett] intends to call Paul Kovac, who was [Consolidated Rail's] claims manager who worked for [Consolidated Rail] in Philadelphia, Pennsylvania. Mr. Kovac lives in Hatboro, Pennsylvania.

*Id.*

Additionally, Mr. Burnett elaborated that he intended to call the four former Consolidated Rail corporate witnesses because they "were responsible for developing industrial hygiene, safety and medical programs to prevent employees from developing cancer due to exposure to diesel exhaust and asbestos [and] failed to do so in a timely and adequate manner." *Id.* at 13. Mr. Burnett averred "[t]hat is negligence under FELA. That is why the four former [Consolidated Rail] corporate employees' testimony is relevant[.]" *Id.* In support of this claim, Mr. Burnett attached as exhibits to his response the notes of testimony given by Mr. Thomas and Mr. Barringer in two unrelated FELA cases in the Court of Common Pleas of Philadelphia County.

Mr. Burnett contended the current conditions of his work place at the rail yards in Illinois and Indiana are irrelevant to his working conditions from 1964 to 2002 when he worked for Appellees. *Id.* at 8. Moreover, he averred that, in addition to Consolidated Rail being incorporated in Pennsylvania with its headquarters in Philadelphia, Penn Central was incorporated in Pennsylvania with its corporate headquarters in Philadelphia. *See id.* at 12.

- 7 -

He posited that Philadelphia has judicial resources and experience with FELA cases to ensure a just trial.

On February 21, 2020, Appellees filed a reply to Mr. Burnett's response in opposition to their motion to dismiss. Therein, Appellees argued that, since Mr. Burnett's complaint alleges exposure to cancer-causing substances that occurred at rail yards in Illinois and Indiana, his former co-workers and supervisors, who reside in Illinois or Indiana, would have the information necessary to testify about Mr. Burnett's work responsibilities, work conditions, and alleged exposure. Appellees noted they have conducted additional investigation and have uncovered additional co-workers and supervisors who are knowledgeable about Mr. Burnett's working conditions in Indiana or Illinois. All of these additional witnesses reside in Indiana or Illinois

Moreover, in support of these averments, Appellees attached to their reply two supplemental affidavits from Ms. Lamp. In the first supplemental affidavit, Ms. Lamp identified additional former co-workers and supervisors of Mr. Burnett's as including: B.D. Regans, J.H. Wright, M.R. Alamprese, M.W. Beague, W.L. Schmidt, A.E. Rucker, E.C. Wacker, J.F. Kasmier, and J.M. Ruiz. Ms. Lamp indicated all of these witnesses reside in either Indiana or Illinois. Moreover, Mr. Regans and Mr. Ruiz are current employees of CSX Transportation.

In her second supplemental affidavit, Ms. Lamp indicated business records from Consolidated Rail indicate that Marcia Comstock, William

Barringer, Ramon Thomas, and Paul Kovac have not been employed by Appellees since 1998. Moreover, Mr. Barringer resides in Florida.

On February 26, 2020, the matter proceeded to a hearing at which the trial court heard oral argument in support of the parties' respective positions. At the conclusion of the hearing, the trial court granted Appellees' motion to dismiss the instant action based on *forum non conveniens* and dismissed Mr. Burnett's complaint without prejudice to his right to re-file in Illinois or some other appropriate jurisdiction. Specifically, the trial court stated the following:

> So weighing the public and private factors, I find that it's appropriate to grant defendants' motion to dismiss this case. Among other factors I'm reviewing or considering is that the plaintiff is an Illinois resident and worked in Illinois and Indiana facilities; that the balance of witnesses are located here in Illinois and Indiana and that the plaintiff received medical treatment in Illinois. And so I'll sign the order.

N.T., 2/26/20, at 6-7.

Mr. Burnett filed a timely notice of appeal, and the trial court directed Mr. Burnett to file a Pa.R.A.P. 1925(b) statement. Mr. Burnett timely complied, and the trial court filed a Rule 1925(a) opinion setting forth in greater detail the reasons for its ruling:

> At the outset, the trial court notes that [Mr. Burnett] currently resides in Chicago, Illinois, and that the alleged unsafe workplace was located in Illinois and Indiana.
>
> ***
>
> All of the identified sources of proof of [Mr. Burnett's] claim--such as the alleged unsafe work environment, [Mr. Burnett's] former supervisors and co-workers, etc.--are located in or nearer to Illinois or Indiana, rather than in or near Philadelphia County, Pennsylvania. [Mr. Burnett] has never been a resident of or

worked in Pennsylvania. Rather, [Mr. Burnett] lived in Chicago, Illinois, for at least 20 years and worked for [Appellees] in and around Chicago, Illinois, for at least 38 years. [Mr. Burnett's] alleged injury occurred at rail yards in Illinois and Indiana. All of [Mr. Burnett's] diagnosing and treating physicians are located outside of Pennsylvania, and [Mr. Burnett] received all of his relevant medical treatment outside of Pennsylvania. Finally, all of his medical records and employment records are located outside of Pennsylvania.

\*\*\*

In further support of their motion to dismiss, [Appellees] identified sixteen trial witnesses who live in Illinois and Indiana. Additionally, [Appellees] noted that any yet-to-be identified former supervisors and co-workers of [Mr. Burnett] are more likely living in Illinois or Indiana than in Pennsylvania.[2]

_____

[2]Contrary to [Mr. Burnett's] claim of error, the trial court considered (1) both the inconvenience of [Appellees'] sixteen potential trial witnesses as well as the inconvenience of [Mr. Burnett's] four potential trial witnesses; and (2) that four of [Mr. Burnett's] fact witnesses had worked for [Consolidated Rail] at its corporate headquarters in Philadelphia County. Nevertheless, the trial court did not abuse its discretion in determining that the private and public factors were strongly in favor of dismissing the action pursuant to Section 5322(e).

As such, it is beyond peradventure that it is easier for the parties to access sources of proof from Illinois or Indiana rather than from Philadelphia County, Pennsylvania.

\*\*\*

[Moreover,] the trial court reasonably concluded that it would be less expensive to have witnesses attend a trial in Illinois or Indiana than in Philadelphia County, Pennsylvania. This is because the overwhelming number of witnesses--especially [Mr. Burnett's] former co-workers and supervisors--reside in the state of Illinois or Indiana.

\*\*\*

It would be easier for the fact-finder to view the premises from Illinois or Indiana than from Philadelphia County, Pennsylvania, because the rail yard that [Mr. Burnett] claims was the only source of his injuries is located in Illinois and Indiana.

\*\*\*

Trying this case in Philadelphia County, Pennsylvania, creates some administrative difficulties for Philadelphia County, Pennsylvania, as compared to trying this case in Illinois or Indiana.

\*\*\*

Considering the minimal connections this case has with Philadelphia County, the trial court reasonably decided not to impose the burden of jury duty upon the citizens of Philadelphia County based upon such minimal connections.[4]

In light of the above, the trial court did not abuse its discretion in determining that the private and public factors were strongly in favor of dismissing the action pursuant to Section 5322(e).

---

[4]Contrary to [Mr. Burnett's] claims of error, the trial court considered the fact that Penn Central and [Consolidated Rail] are Pennsylvania Corporations and that [Consolidated Rail's] principal place of business is located in Philadelphia County, Pennsylvania. However, such facts do not preclude dismissal on the basis of *forum non conveniens*. **Wright v. Consolidated Rail Corporation**, 215 A.3d 982, 994-96 (Pa.Super. 2019) (holding that the fact that the moving party does business in or has its principal place of business in a plaintiff's choice of forum supports venue, but it does not preclude dismissal based on *forum non conveniens*). Therefore, the trial court did not abuse its discretion in determining that the private and public factors were strongly in favor of dismissing the action pursuant to Section 5322(e).

---

Trial Court Opinion, filed 7/30/20, at 5-8 (citations to record and footnote omitted).

On appeal, Mr. Burnett sets forth the following issues in his "Statement of Questions Presented" (verbatim):

1. Whether the Trial Court abused its discretion in finding that weighty reasons existed to support dismissal under the doctrine of *forum non conveniens*?

2. Whether the Trial Court should have considered not only that [Consolidated Rail] and Penn Central were Pennsylvania corporations and that both of their corporate headquarters were located in Philadelphia, PA, but also that four of the Plaintiff's fact witnesses worked for [Consolidated Rail] at its corporate headquarters in Philadelphia, PA?

J-A05037-21

3. Whether the Trial Court erred in considering the inconvenience of Defendants' potential hypothetical fact witnesses over the actual inconvenience of Plaintiff's four fact witnesses who would be required to travel to Illinois for trial?

Mr. Burnett's Brief at 2.[7]

Initially, we note the following relevant principles, which guide our review:

> Orders on motions to dismiss under the doctrine of *forum non conveniens* are reviewed for an abuse of discretion. This standard applies even where jurisdictional requirements are met. Moreover, if there is any basis for the trial court's decision, the decision must stand.
>
> An abuse of discretion occurs if, *inter alia*, there was an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is *de novo* and the scope of review is plenary.
>
> In Pennsylvania, the doctrine of *forum non conveniens*, which originated in Common Law, has been codified by statute:
>
>> **Inconvenient forum.-**When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.
>
> 42 Pa.C.S.A. § 5322(e).

---

[7] Although Mr. Burnett has set forth three separate issues in his "Statement of Questions Presented," he intertwines and discusses the issues together in the argument portion of his brief. We shall treat the issues in a similar manner.

***Hovatter v. CSX Transportation, Inc.***, 193 A.3d 420, 424 (Pa.Super. 2018)

(quotation marks, quotations, and citations omitted).[8]

The doctrine of *forum non conveniens* "provides the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances." ***Alford***, 531 A.2d at 794 (citation omitted).

> The two most important factors the trial court must apply when considering whether dismissal is warranted are that "1.) the plaintiff's choice of forum should not be disturbed except for 'weighty reasons,' and 2.) there must be an alternate forum available or the action may not be dismissed."
>
> ***
>
> [W]ith respect to the initial factor, we note that "a court may find that the presumption in favor of a plaintiff's choice of forum may be less stringently considered when the plaintiff has chosen a foreign forum to litigate his or her claims." Furthermore,
>
>> To determine whether such "weighty reasons" exist as would overcome the plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved. ***Petty v. Suburban General Hospital***, 525 A.2d 1230, 1232 (Pa.Super. 1987). The ***Petty*** Court reiterated the considerations germane to a determination of both the plaintiff's private interests and those of the public as defined by the United States Supreme Court in ***Gulf Oil Corp. v. Gilbert***, 330 U.S. 501, 67 S.Ct. 839 (1947). They are:

---

[8] Our courts lack the authority to transfer matters to courts of our sister states; but rather, when appropriate, our courts should dismiss the action to permit re-filing in another state. ***See Alford v. Philadelphia Coca-Cola Bottling Co., Inc.***, 531 A.2d 792 (Pa.Super. 1987).

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the actions; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial.

\*\*\*

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is appropriateness, too, in having the trial…in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

**Hovatter**, 193 A.3d at 424-25 (quotations and citations omitted).

Instantly, as the trial court concluded, the second factor pertaining to the existence of an alternate forum is not at issue in the case *sub judice*. **See Hovatter**, **supra**. That is, it is undisputed there is an alternate forum (Illinois) available. Moreover, Appellees have stipulated to waive the statute of limitations, as well as not object on the basis of venue or personal jurisdiction, if Mr. Burnett re-files in an appropriate jurisdiction.

- 14 -

Accordingly, we instead focus on the "weighty reasons" factor in the trial court's analysis of Appellees' motion to dismiss for *forum non conveniens*.  In this regard, we note Mr. Burnett contends the trial court abused its discretion in finding Appellees demonstrated "weighty reasons" to overcome his choice of forum.  He specifically avers his case is indistinguishable from ***Robbins for Estate of Robbins v. Consolidated Rail Corporation***, 212 A.3d 81 (Pa.Super. 2019).  Appellees, on the other hand, contend Mr. Burnett's case is more akin to ***Wright v. Consolidated Rail Corporation***, 215 A.3d 982 (Pa.Super. 2019).

In ***Wright***, the trial court denied the motion to dismiss Mr. Wright's complaint based on *forum non conveniens*, and Consolidated Rail and CSX Transportation appealed. In that case, Mr. Wright was a non-resident of Pennsylvania, he had been a car inspector at the DeWitt Train Yard in Syracuse, New York, and he averred that, as a direct result of his job duties, he suffered repetitive stress injuries to both shoulders.  ***See Wright***, ***supra***.

Moreover, Mr. Wright lived in New York while working for the railroad companies from 1974 to 2014; however, he moved to South Carolina upon his retirement.  All of his treating physicians and medical files were located in New York, New Jersey, or Florida, and all of his fact witnesses were former or current railroad workers who resided outside of Pennsylvania.  ***See Wright***, ***supra***.

- 15 -

Accordingly, based on the record in **Wright**, this Court held the trial court abused its discretion in denying Consolidated Rail's and CSX Transportation's motion to dismiss based on *forum non conveniens*. In so holding, we noted the trial court erred in giving great deference to Mr. Wright's choice of forum and incorporating "plaintiff-friendly" Pa.R.C.P. 1006(d) standards into the analysis.[9] **Id.** at 992. Further, we noted the trial court erred in concluding that Consolidated Rail's and CSX Transportation's sworn affidavits were insufficient regarding the New York residency of their witnesses. **Id.** at 993. We specifically held that "inasmuch as the trial court determined there is no dispute that [] Wright worked for [Consolidated Rail and CSX Transportation] exclusively in New York, [the] assertion in [their] affidavits that most or all of [their] witnesses reside primarily, if not exclusively, in New York does not require additional record support." **Id.** at 993-94. Accordingly, we reversed and remanded as it pertained to the trial court's consideration of Consolidated Rail's and CSX Transportation's affidavits and evidentiary burden. **Id.**

In **Robbins**, **supra**, Consolidated Rail and Penn Central filed a motion to dismiss for *forum non conveniens* because the decedent's injuries occurred in Indiana and their two proposed witnesses were located outside of

---

[9] As this Court acknowledged in **Wright**, "a defendant bears a heavier burden under Pa.R.C.P. 1006(d)(1), which permits [intrastate] forum transfers only when the defendant establishes that a plaintiff's chosen forum is oppressive and vexatious for the defendant." **Wright**, 215 A.3d at 992.

Pennsylvania. In response to the motion to dismiss, the plaintiff averred he intended to call four witnesses, who were previous employees of Consolidated Rail in Philadelphia: Dr. Comstock, Mr. Barringer, Mr. Thomas, and Mr. Kovac (the same four witnesses Mr. Burnett avers he plans to call at trial in this case).

Additionally, the plaintiff argued that "although the decedent worked at the train yard in Indiana, the policies and procedures related to the decedent's exposure to chemicals and cancer-causing substances were determined at Consolidated Rail's headquarters in Philadelphia." *Robbins*, 212 A.3d at 85-86. Moreover, the plaintiff argued the viewing of the work site would not be desirable, and in fact, would be dangerous to a jury. *Id.* at 86. Following a hearing, the trial court denied the motion to dismiss.

On appeal in *Robbins*, Consolidated Rail and Penn Central argued, *inter alia*, that the trial court abused its discretion in weighing the public and private factors, and thus, erred in concluding there were insufficient "weighty reasons" to grant the motion to dismiss. This Court disagreed and held the following:

> With regard to the private factors, the trial court relevantly concluded there was no evidence that Indiana would provide easier access to the decedent's employment records, which are housed in New Jersey and/or Florida. Further, with regard to the cost of obtaining the attendance of willing witnesses and the availability of compulsory process for obtaining the attendance of unwilling witnesses, the trial court noted [Consolidated Rail and Penn Central] identified two potential witnesses, both of whom were [] former employees: [] Mason, who resides in Illinois, and [] Toney, who resides in [Indiana]. [] Robbins, on the other hand,

- 17 -

identified four fact witnesses, all of whom reside in Pennsylvania and were former Consolidated Rail employees. Additionally, the trial court noted [Consolidated Rail and Penn Central] conceded that it is unlikely any party would seek a request to view the train yard at issue.

With regard to the public factors, and Pennsylvania's connection to the lawsuit, it is noteworthy that [] Robbins averred that, although he worked at the train yard in Indiana, the policies and procedures related to his exposure to chemicals and cancer-causing substances were determined at Consolidated Rail's headquarters in Philadelphia. Thus, as the trial court concluded, Pennsylvania citizens have a relation to the litigation.

Based on the aforementioned, we conclude the trial court did not abuse its discretion in weighing the private and public factors. We note it is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is "not an exercise in counting numbers." **Bochetto v. Dimeling, Schreiber & Park**, 151 A.3d 1072, 1083 (Pa.Super. 2016). Because [Consolidated Rail and Penn Central] have not met their burden, we affirm.

**Robbins**, 212 A.3d at 90 (footnote omitted).

Furthermore, in **Robbins**, we distinguished the facts of Robbins' case from **Hovatter**, **supra**. In this regard, this Court held:

To the extent [Consolidated Rail and Penn Central] aver the facts of this case are indistinguishable from **Hovatter**, **supra**, we disagree. In **Hovatter**, this Court held the trial court erred in failing to dismiss the plaintiff's action, which was filed in Pennsylvania, under the doctrine of *forum non conveniens*. However, in the instant matter, unlike in **Hovatter**, there were Pennsylvania witnesses identified by a party and a viewing of the site was not at issue. Further, we note in the case *sub judice*, unlike in **Hovatter**, [] Robbins specifically averred the policies and procedures related to the decedent's exposure to alleged chemical/cancer-causing substances were developed by [Consolidated Rail] at its headquarters in Philadelphia. There was no such allegation made in **Hovatter** as to CSX Transportation (the sole defendant in **Hovatter**).

**Robbins**, 212 A.3d at 90 n.8.

- 18 -

Recently, in ***Ficarra v. Consolidated Rail Corporation***, 242 A.3d 323 (Pa.Super. 2020),[10] this Court examined the holdings of ***Wright***, ***supra***, and ***Robbins***, ***supra***.

In ***Ficarra***, the record before the trial court demonstrated that none of the plaintiffs resided in Pennsylvania, and all of the plaintiffs worked for the railroad companies outside of Pennsylvania from 1953 to 2012.  In its motion to dismiss, the railroad companies averred none of the potential fact witnesses or sources of proof resided in Pennsylvania; the railroad companies would be unable to avail themselves of compulsory process for attendance of unwilling non-Pennsylvania witnesses; there would be a high cost of obtaining attendance of willing out-of-state witnesses; a fact-finder in Pennsylvania would be unable to view easily the plaintiffs' work premises; and there would be a burden on Pennsylvania courts, taxpayers, and jury pool.  ***Ficarra***, ***supra***.

_____

[10] We note that ***Ficarra*** involved nine different plaintiffs, and we consolidated the cases in this Court.  In all nine cases, the trial court denied the railroad defendants' motions to dismiss.  On appeal, we reversed the orders in eight of the cases and concluded the trial court abused its discretion in holding the defendants did not provide sufficient "weighty reasons" for dismissal.  ***See id.*** However, we affirmed in one of the cases.

Specifically, with regard to the latter, we noted the procedural posture of the case was such that it was "trial ready" with discovery complete and a trial term set by the Philadelphia Court of Common Pleas.  ***See id.***  Thus, in weighing the factors, we concluded the trial court did not abuse its discretion in holding dismissal would be inappropriate based on *forum non conveniens*. ***See id.***  We specifically note the case *sub judice* is distinguishable from the latter case in ***Ficarra*** since the case is not "trial ready" in Philadelphia County.

In response, the plaintiffs argued they intended to call the same witnesses as the plaintiff in **Robbins**: Dr. Comstock, Mr. Barringer, Mr. Thomas, and Mr. Kovac. Based on the record before it, the trial court determined that the plaintiffs' four witnesses had worked for Consolidated Rail, but only Dr. Comstock undisputedly continued to reside in Pennsylvania. **See Ficarra**, **supra**. Moreover, the trial court determined that all of the plaintiffs' former co-workers and supervisors, who were potential witnesses, lived outside of Pennsylvania, the plaintiffs' injuries occurred outside of Pennsylvania, and the plaintiffs' physicians, as well as medical records, were outside of Pennsylvania. **See id.**

Based on the aforementioned, the trial court in **Ficarra** denied the railroad companies' motions to dismiss based on *forum non conveniens*; however, in its subsequent Pa.R.A.P. 1925(a) opinions, the trial court opined that it should have granted the railroad companies' motions. **See id.** Upon review, this Court agreed.

Specifically, we acknowledged the plaintiffs in **Ficarra**, similar to the plaintiff in **Robbins**, listed Comstock, Barringer, Thomas, and Kovac as four witnesses they intended to call at trial. We also acknowledged that "at first glance [the] plaintiffs' cases strikingly resemble **Robbins**." **Ficarra**, 242 A.3d at 336. However, we concluded there were two important distinctions between **Ficarra** and **Robbins**.

Namely, in **Robbins**, the plaintiff set forth a specific argument that Consolidated Rail developed policies and procedures in its Philadelphia office that created the conditions leading to the plaintiff's injuries; however, in **Ficarra**, the plaintiffs provided scant argument as to the relevance of the former Consolidated Rail employees' testimony. Furthermore, based on the record in **Robbins**, the trial court found all four of the former Consolidated Rail employees resided in Pennsylvania; however, based on the record, the trial court in **Ficarra** found only Dr. Comstock resided in Pennsylvania.

Accordingly, in **Ficarra**, this Court relevantly held:

> [W]e conclude the trial court abused its discretion in applying the wrong evidentiary burden….However, given the records before it in these cases, we agree with the trial court's re-analysis and find these cases distinguishable from **Robbins**. All of [the] plaintiffs' former co-workers, supervisors, and diagnosing and treating physicians reside outside Pennsylvania. The work sites are outside Pennsylvania. The only connection to Pennsylvania relevant to [the] plaintiffs' claims is that four individuals who used to work in Philadelphia were allegedly involved in the drafting and implementation of procedures that led to [the] plaintiffs' injuries. However, on the record before the trial court, only one of those witnesses undisputedly resides in Pennsylvania currently. Moreover, [the] plaintiffs largely failed to explain the relevance of the former employees' testimony. Weighing the private and public interest factors using the correct evidentiary burden, the trial court here ultimately concluded that [the railroad companies] presented sufficient weighty reasons to warrant dismissal for *forum non conveniens*[.] We discern no abuse of discretion by the trial court in reaching this conclusion. **See Robbins**, 212 A.3d at 90 ("[I]t is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is not an exercise in counting numbers.") (citation and quotation marks omitted). Accordingly, we vacate the orders denying the motions to dismiss…and remand to the trial court to dismiss these cases to permit re-filing in an appropriate jurisdiction.

*Ficarra*, 242 A.3d at 337.

Preliminarily, similar to our initial assessment in *Ficarra*, we acknowledge the facts of the case *sub judice* appear at first glance to resemble *Robbins*. However, there are important differences, which weigh in favor of dismissal.

First, in *Robbins*, where the decedent worked exclusively in Indiana, the railroad companies indicated it planned to call as witnesses two of the decedent's former supervisors: Dale Mason, who resided in Illinois, and Charles Toney, who resided in Indiana. Both of these supervisors were retired.

However, in the case *sub judice*, Appellees informed the trial court, and provided supporting affidavits, indicating they had identified sixteen of Mr. Burnett's former co-workers and supervisors, two of whom are actively working for Appellees. Moreover, all sixteen of these former co-workers and supervisors reside in Illinois or Indiana. Appellees averred a substantial disruption and cost to their business, as well as greater personal inconvenience and cost to these witnesses, if they are required to travel to Pennsylvania, as opposed to Illinois or Indiana. As the trial court determined, "the overwhelming number of witnesses--especially [Mr. Burnett's] former co-workers and supervisors-- reside in the state of Illinois or Indiana." Trial Court Opinion, filed 7/30/20, at 7 (footnote omitted).

Furthermore, in *Robbins*, this Court specifically recognized that "a viewing of the site was not at issue." *Robbins*, 212 A.3d at 90 n.8. However,

in the case *sub judice*, Appellees averred it would be "important" to visit Mr. Burnett's work sites during trial. **See** Appellees' Motion to Dismiss, filed 12/3/19, at 21. The trial court accepted Appellees' argument and concluded the necessity of viewing the work premises weighed in favor of dismissal. Trial Court Opinion, filed 7/30/20, at 7.

As it pertains to the public factors, in the case *sub judice*, the trial court concluded there would be more administrative difficulties if the case is tried in Philadelphia, Pennsylvania, as opposed to Illinois or Indiana. There was no such finding by the trial court in **Robbins**.

Accordingly, although the trial court accepted in this case that Mr. Burnett identified four witnesses, all of whom formerly worked for Consolidated Rail in Pennsylvania,[11] and three of whom presently reside in Pennsylvania,[12] the trial court held that, upon weighing all of the relevant factors, Appellees met their burden of demonstrating "weighty reasons" for dismissal.

---

[11] To the extent Mr. Burnett avers the trial court did not consider the fact he had four fact witnesses, all of whom previously worked for Consolidated Rail at its corporate headquarters in Philadelphia, we find no merit. The trial court indicated it considered Mr. Burnett's witnesses in assessing whether Appellees demonstrated "weighty reasons" for dismissal. **See** Trial Court Opinion, filed 7/30/20, at 6 n.2.

[12] Based on the record in **Robbins**, the trial court determined that all four of the plaintiff's witnesses (Comstock, Barringer, Thomas, and Kovac) resided in Pennsylvania. In the case *sub judice*, the record revealed Mr. Barringer resides in Florida.

Based on the record, we find no abuse of discretion. The trial court properly weighed the private and public factors using the correct evidentiary burden. ***Ficarra***, ***supra***. Thus, we affirm the order granting Appellees' motion to dismiss.

As this Court has previously recognized, it is within the trial court's discretion to weigh some factors more heavily than others and weighing the factors is not "an exercise in counting numbers." ***Bochetto***, 151 A.3d at 1083. ***See Hovatter***, ***supra*** (holding that, in reviewing orders dismissing an action under the doctrine of *forum non conveniens*, if there is any basis for the trial court's decision, the decision must stand).

Affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 4/15/2021*